# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOEL MORRISON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-217** |
| **MARLIN GUSMAN** | **SECTION "A"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Joel Morrison, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983. He named Orleans Parish Criminal Sheriff Marlin Gusman as the sole defendant. In this lawsuit, plaintiff challenges various conditions of his confinement.

### I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S. Ct. 1230 and 1231 (2008). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

2

unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[1] the Court nevertheless finds that, for the following reasons, the complaint must be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted.

## II. Request for Transfer to a State Facility

As a preliminary matter, the Court notes that the main form of relief requested by plaintiff is an order that he be transferred to another facility. This Court has no authority to issue such an order. Placement of state prisoners is a matter left to the discretion of state officials. A prisoner has no constitutional right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982); Oatis v. St. Tammany

---

[1] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *3 (E.D. La. Oct. 29, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *8 n.12 (E.D. La. May 10, 2007).[2]

### III. Naming of Sheriff Gusman as the Defendant

Orleans Parish Criminal Sheriff Marlin Gusman is the sole defendant named in this lawsuit. Plaintiff does not indicate whether Gusman is being sued in his official capacity, his individual capacity, or both. However, regardless of plaintiff's intent, no claim has been properly stated against Gusman in any capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Gusman would in reality be a claim against the local governmental body itself. Glasper v. Guzman, Civ. Action No. 06-2040, 2009 WL 1507568, at *6 (E.D. La. May 27, 2009); Stewart v. Criminal District Court of Louisiana, Civ. Action No. 08-3731, 2008 WL 4758610, at *3 (E.D. La. Oct. 30, 2008). The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The

---

[2] Moreover, the Court notes that Louisiana law expressly provides: "[A]ny individual subject to confinement in a state adult penal or correctional institutional shall be committed to the Louisiana Department of Corrections and not to any particular institution within the jurisdiction of the department." La.Rev.Stat.Ann. § 15:824(A). State law further expressly provides that, when necessary, state prisoners may be confined in parish jails. La.Rev.Stat.Ann. § 15:824(B)(1)(a).

4

> description of a policy or custom and its relationship to the underlying constitutional
> violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom, and, therefore, no official-capacity claim has been properly stated against Gusman.

Plaintiff has likewise failed to state a proper individual-capacity claim against Gusman. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Here, plaintiff makes no allegations whatsoever against Gusman. Moreover, Gusman cannot

5

be held liable under any theory of strict liability[3] or vicarious liability[4] for federal civil rights violations allegedly committed by a subordinate.

In any event, out of an abundance of caution, the Court further notes that plaintiff's underlying claims would still subject to dismissal for the following reasons even if the claims were considered on the merits.

### IV. Plaintiff's Claims

### A. Inadequate Medical Care

Plaintiff's first claim, broadly construed, is that he has been denied adequate medical care. It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). For the reasons noted below, however, plaintiff's allegations fall far short of what is required to state a nonfrivolous medical claim.

First, plaintiff alleges that prison officials refused to take him to a urology appointment he scheduled at University Hospital prior to being incarcerated. Even if that is true, that allegation is

---

[3] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[4] An official cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

clearly insufficient to state a claim. Plaintiff does not allege the urology appointment concerned a serious medical need; in fact, he does not even identify the condition from which he allegedly suffers. Moreover, the fact that prison officials would not take him to an outside medical appointment is of no moment. Once he was incarcerated, his primary source of medical care became the prison medical department, and it was then up to the prison doctor to decide whether outside care was needed. Such decisions are based on the doctor's professional judgment, and, as such, generally are not second-guessed in a federal civil rights action. See Alfred v. Texas Department of Criminal Justice, 80 Fed. App'x 926, 927-28 (5th Cir. 2003); see also Fowler v. Hodge, 94 Fed. App'x 710, 713 (10th Cir. 2004) ("Whether and when routine treatment should be augmented with the assistance of a specialist involves an exercise of medical judgment that is generally not subject to redress under the Eighth Amendment."); Walker v. Llovet, Civ. Action No. 08-3834, 2008 WL 4949038, at *3 (E.D. La. Nov. 18, 2008).

Second, plaintiff states that inmates endure long waits to be seen in the prison medical department. Plaintiff does not allege that he personally has endured such waits, and he lacks standing to pursue a claim on behalf of other inmates. Miller v. Conway, 331 Fed. App'x 664, 665 (11th Cir. 2009); Reeves v. Collins, No. 94-10182, 1994 WL 559050, at *2 (5th Cir. Sept. 23, 1994); Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Sweat v. Corrections Corporation of America, No. 08-CV0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009); Sims v. Kitchen, Civ. Action No. 8:08-cv-1049, 2009 WL 363619, at *4 (D.S.C. Feb. 10, 2009). However, even if he has personally had to wait for medical care, his claim would be actionable only if he is requesting care for a "serious medical need." Again, plaintiff has not even identified his purported medical need,

much less alleged that it is a serious one. Further, in any event, mere delay in providing medical care is insufficient to create § 1983 liability unless substantial harm resulted. Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993); Bennett v. Louisiana *ex rel*. Department of Public Safety and Corrections, No. 07-31189, 2009 WL 102080, at *4 (5th Cir. Jan. 15, 2009); Davis v. Kuykendall, 242 Fed. App'x 961, 962-63 (5th Cir. 2007); Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *6 (E.D. La. Oct. 23, 2009). In this case, plaintiff has not alleged that he suffered any harm from the purported delays.

Third, plaintiff complains that prisoners are exposed communicable diseases from "incoming inmates."[5] To the extent that he is complaining that new inmates are not routinely tested for infectious diseases, it is clear that no such screening of all inmates is constitutionally required. See Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir. 2001); Kennedy v. Gusman, No. 06-5274, 2007 WL 1302554, at *3 (E.D. La. May 2, 2007); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *4 (E.D. La. Oct. 1, 2009).

Lastly, plaintiff claims that "[t]he medical staff is inadequate for the number of inmates." That allegation is purely conclusory, and conclusory allegations are insufficient to state a civil rights claim. See, e.g., Richards v. Johnson, 115 Fed. App'x 677, 678 (5th Cir. 2004); Arnaud v. Odom, 870 F.2d 304, 307 (5th Cir. 1989).

## B. Lack of Dining Facilities

Plaintiff's second claim is that inmates do not have access to a dining room or tables and, therefore, must eat in their cells in the vicinity of the toilet. The fact that inmates may be required

---

[5] Rec. Doc. 1, p. 6.

to eat in their cells while sitting on the floor or bunks is not a condition so egregious as to amount to a constitutional violation. Jones v. Schouppe, Civ. Action No. 06-1083, 2008 WL 163049, at *4 (W.D. Pa. Jan. 15, 2008); Rayner v. Rees, Civ. Action No. 3:07-CV-P-124-S, 2007 WL 2000080, at *5 (W.D. Ky. June 28, 2007); Malone v. Becher, No. NA 01-101, 2003 WL 22080737, at *12 (S.D. Ind. Aug. 29, 2003); Perkins v. Kansas Department of Corrections, No. CIV. A. 95-3520, 1997 WL 383072, at *3 (D. Kan. June 9, 1997), aff'd, 131 F.3d 152 (10th Cir. 1997). Likewise, the fact that inmates must eat in the vicinity of the toilet may be unpleasant but it is not unconstitutional. See, e.g., Hill v. Smith, Civ. Action No. 09-0811, 2010 WL 148272, at *6-7 (W.D. La. Jan. 12, 2010).

## C. Lack of a Law Library

Plaintiff states his third claim, without further explanation or allegations, as follows: "There are no law library for the inmates to help in their defense, to file meaningful post conviction or appeals."[6] It is clear that prisoners have a constitutional right of meaningful access to the courts, including access to adequate law libraries or assistance from legally trained personnel needed to file nonfrivolous legal claims challenging their convictions or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 828 (1977); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). However, the Supreme Court in Bounds "did not create an abstract, freestanding right to a law library or legal assistance" in the prison. See Lewis v. Casey, 518 U.S. 343, 351 (1996).

Moreover, claims alleging violations of the right of access to courts are not cognizable unless the inmate's position as a litigant was prejudiced by the denial of access. See, e.g., Chriceol v.

---

[6] Rec. Doc. 1, p. 7.

Phillips, 169 F.3d 313, 317 (5th Cir. 1999); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993). Plaintiff does not allege that he has suffered any prejudice whatsoever from not having direct access to a law library, and it is clear "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis, 518 U.S. at 351. In the instant case, plaintiff "has not alleged that he was actually denied access to the court or that any pending litigation was prejudiced, and therefore he has not stated a cognizable § 1983 claim." Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995).

Further, in any event, numerous cases in this Court over the years have established that, although inmates within the Orleans Parish Prison system are not allowed direct access to a law library, they are allowed to request and borrow law books from a central law library. The adequacy of that legal program, including the use of that law book loan system, was fully litigated in Howard v. Foti, No. 82-460 c/w 84-499, and monitored by this Court for many years. In that case, the Court fashioned an order to ensure that the prison law library and legal services program were constitutionally adequate, and it was determined that the Orleans Parish Prison system's law library and legal services program would be constitutionally adequate if the specifications set forth in the Court's order were met. Howard v. Foti, No. 82-460 c/w 84-499, 1989 WL 152715, at *1 (E.D. La. Dec. 14, 1989); see also Francis v. Gusman, Civ. Action No. 05-4065, 2006 WL 1985961, at *4 (E.D. La. June 21, 2006); Griffin v. Foti, Civ. Action No. 03-2670, 2004 WL 1687864, at *2 (E.D. La. July 27, 2004). This Court need not endlessly relitigate the very issue decided in Howard v.

Foti, especially in that plaintiff has not alleged that either the facts or the law have changed since that case was decided. Therefore, this Court looks to that precedent and finds that plaintiff's claim is meritless.[7]

### D. Lack of Programs for Convicted Prisoners

Plaintiff's fourth claim is that inmates do not have access to educational or rehabilitative services or programs. That claim is frivolous because there is no constitutional right to such services or programs in prison. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988) ("[H]owever worthwhile and prudent such a program might be, ... a state has no constitutional obligation to provide basic educational or vocational training to prisoners."); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *2-3 (E.D. La. Oct. 29, 2009) ("Prisoners have no constitutional right to participate in educational, work release or other rehabilitation programs, particularly when no such programs exist at the facility."); Oglesby v. Gusman, Civ. Action No. 09-3593, 2009 WL 3254145, at *2 (E.D. La. Oct. 7, 2009); Sampson v. Corrections Corporation of America, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) ("Prisoners do not have a constitutional right to 'social services.' Nor do inmates have a protected liberty interest in specific educational programs, recreation opportunities, or in avoidance of being transferred to facilities where the programs are less comprehensive. The United States Constitution does not

---

[7] "Stare decisis is the doctrine that demands adherence to judicial precedents." Meadows v. Chevron, U.S.A. Inc., 782 F. Supp. 1189, 1192 (E.D. Tex. 1991), aff'd in part, 990 F.2d 626 (5th Cir. 1993). The doctrine requires that like facts be given like treatment in a court of law. See Taylor v. Charter Medical Corp., 162 F.3d 827, 832 (5th Cir. 1998). Stare decisis is not narrowly confined to parties and their privies; rather, when its application is appropriate, the doctrine is broad in impact, reaching strangers to earlier litigation. Equal Employment Opportunity Commission v. Trabucco, 791 F.2d 1, 2 (1st Cir. 1986).

mandate educational, rehabilitative, or vocational programs." (citation omitted)); Wilbon v. Gusman, Civ. Action No. 05-2443, 2006 WL 2119458, at *2 (E.D. La. July 25, 2006).

### E. Lack of an Adequate Monitoring System

In his fifth claim, plaintiff states: "There are no monitor system to monitor inmates that who are susceptible to attacks by the rest of the prison population, inmate fear for their safety."[8] It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). That said, plaintiff does not allege that the purportedly inadequate security has ever placed *him* in harm's way, that *he* personally is particularly susceptible to being attacked, or that prison officials have been made aware of and are deliberately indifferent to *his* need for additional protection.[9] Instead, plaintiff offers nothing more than his vague and conclusory allegation that

---

[8] Rec. Doc. 1, p. 8.

[9] The United States Fifth Circuit Court of Appeals has held:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Further, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, Texas, 245 F.3d 447, 459 (5th Cir. 2001).

security is inadequate, and it is clear that such allegations will not suffice. See, e.g., Sweat v. Corrections Corporation of America, No. 08-CV0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009). Plaintiff simply has not "plead enough facts to state a claim to relief that is plausible on its face," in that his allegations do not rise above a purely "speculative level." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted), cert. denied, 128 S. Ct. 1230 and 1231 (2008).

### F. Overcrowding/Unsanitary Conditions/Lack of Hot Showers

Plaintiff's sixth claim is that inmates are forced to live in overcrowded, unsanitary conditions and are occasionally deprived of hot water for showering. Those claims are likewise meritless.

As to the alleged overcrowding, the mere fact that prisoners are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981); Castillo v. Cameron County, Texas, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional."); Price v. New Orleans Parish Criminal Sheriff, Civ. Action No. 09-3573, 2009 WL 2139702, at *3 (E.D. La. July 13, 2009); Thompson v. Stalder, Civ. Action No. 06-659, 2008 WL 874138 (M.D. La. April 1, 2008) ("[T]he law is clear that the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension. It has been held that such a claim, without more, does not violate an inmate's constitutional rights."); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007).

The Court notes that plaintiff complains that the overcrowding sometimes requires that inmates sleep on the floor. Even if this happened to plaintiff personally, a fact which he does *not* allege, his claim is frivolous. To the extent that a prisoner must sleep on a mattress placed on the floor, that is not a violation because the Constitution does not require elevated beds. See Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); see also Sanders v. Kingston, 53 Fed. App'x 781, 783 (7th Cir. 2002); Finfrock v. Jordan, No. 95-3395, 1996 WL 726426, at *1 (7th Cir. Dec. 6, 1996); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); McCarty v. McGee, Civ. Action No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008); Cooler v. Escambia County Detention Facilities, No. 3:07cv188, 2007 WL 3072418, at *6 (N.D. Fla. Oct. 22, 2007); Warren v. Missouri Department of Corrections, No. 4:06CV1496, 2006 WL 3690751, at *3 (E.D. Mo. Dec. 12, 2006); Fischer v. Ellegood, No. 2:03-cv-453, 2006 WL 2425421, at *9 (M.D. Fla. Aug. 21, 2006), aff'd, 238 Fed. App'x 428 (11th Cir. 2007); Doyle v. Fairman, No. 96 C 2572, 1997 WL 610332, at *2 (N.D. Ill. Sep. 29, 1997); Burrell v. Griffith, 158 F.R.D. 104, 106 (E.D. Tex. 1994); Datz v. Hutson, 806 F.Supp. 982, 989 (N.D. Ga. 1992), aff'd, 14 F.3d 58 (11th Cir. 1994). To the extent that plaintiff is alleging that inmates are sometimes completely denied mattresses or bedding "for days,"[10] that claim likewise fails because such denials for brief periods of time do not rise to the level of a constitutional violation. Phillips v. East, 81 Fed. App'x 483, 485 (5th Cir. 2003); Hunt v. Lee County Sheriff's Department, No. 1:08CV284, 2009 WL 4505890, at *4 (N.D. Miss. 2009).

As to the allegedly unsanitary conditions, there is clearly a point beyond which a prison cell's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376

---

[10] Rec. Doc. 1, p. 9.

F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). However, the conditions alleged by plaintiff do not rise to that level, and the Court notes that much more egregious conditions have been found to be constitutional. See, e.g., Davis v. Scott, 157 F.3d 1003 (5th Cir. 1998) (no constitutional violation found where prisoner alleged that he was housed for three days in a "filthy" cell with "blood on the walls and excretion on the floors"); Smith v. Copeland, 87 F.3d 265, 268-69 (8th Cir. 1996) (prisoner who was housed for four days in cell with raw sewage from an overflowing toilet failed to state an Eighth Amendment claim). Simply because his dorm is less sanitary than he would like does not render the conditions unconstitutional. See Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").

Lastly, plaintiff complains that at times the showers do not have hot water. Even if that is true, it does not amount to a constitutional violation. Wiley v. Blanco, Civ. Action No. 06-3512, 2007 WL 1747019, at *11 (E.D. La. June 15, 2007); Kennedy v. Gusman, Civ. Action No. 06-5274, 2007 WL 1302554, at *3 (E.D. La. May 2, 2007); see also Lopez v. Robinson, 914 F.2d 486, 492 (4th Cir. 1990).

In summary, the Court finds that the alleged conditions, whether considered individually or collectively, are not so egregious as to constitute cruel and unusual punishment in violation of the Eighth Amendment.

### G. Lack of Due Process in Disciplinary Proceedings

Plaintiff's seventh claim is that inmates are placed in administrative lockdown without notice of the disciplinary charges against them, a hearing, or representation by counsel. Plaintiff does not allege that this has happened to him, and, as previously noted, he lacks standing to pursue a claim on behalf of other prisoners. However, even if this did in fact happen to plaintiff personally, his claim is foreclosed by Sandin v. Conner, 515 U.S. 472 (1995).

In Sandin, the United States Supreme Court held:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84 (citations omitted). The United States Fifth Circuit Court of Appeals has held: "In the wake of Sandin, ... 'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996) (quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)); see also Hernandez v. Velasquez, 522 F.3d 556, 562 (5th Cir. 2008); Hodge v. B.B. Sixty Rayburn Correctional Center, Civ. Action No. 08-3193, 2008 WL 4628586, at *4-5 (E.D. La. Oct. 16, 2008).

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and for otherwise failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this fourth day of February, 2010.

*(signature)*

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.